# First National Bank of Prestonsburg v. Bank of Ravenswood, W. Va.

(Decided January 20, 1911.)

## Appeal from Floyd Circuit Court.

Mistake.—Where one of two innocent persons must suffer a loss by reason of a mistake, the one whose mistake causes the loss must bear it.

JAMES GOEBLE and HAZELRIGG & HAZELRIGG for appellant.

PROCTOR MALIN, F. A. HOPKINS, HOPKINS & HOPKINS, J. B. WILHOIT and MALIN & MALIN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

On October 17, 1905, N. B. Armstrong drew a check in favor of J. V. Armstrong, cashier, for one thousand dollars, on the account of N. B. Armstrong & Son in the appellant bank, and mailed the check to him at Ravenswood, W. Virginia, at which place he was cashier of the appellee bank. On the 17th of October 1905, N. B. Armstrong drew a check for one thousand dollars on the account of N. B. Armstrong & Son in the appellant bank, payable to J. V. Armstrong, cashier, and this check was certified on October 18th, by J. M. Weddington, cashier of the appellant bank, and was also sent to J. V. Armstrong. This certified check was received by J. V. Armstrong on October 21st, and the uncertified check on October 19th, and both were placed to the credit of N. B. Armstrong in appellee bank. On October 27th., the uncertified check for one thousand dollars, together with

a certified check of one R. E. McQuay, who was also a depositor in the appellant bank, were presented to the appellant bank through the Bank Josephine of Prestonsburg, Ky., for payment. The payment of each of these checks was refused, and thereupon they were protested and returned by the Bank Josephine to the National Bank of Kentucky at Louisville, from which it had received them. On October 28th., the certified check for one thousand dollars came for collection to the Bank Josephine, and upon being presented to the appellant bank for payment, payment was refused, and this check was also returned to the National Bank of Kentucky from which it had come. A few days after this, J. M. Weddington, the cashier of the appellant bank, who was absent from home when these checks were presented and payment refused, returned and upon learning that the three thousand dollar certified check of McQuay and the one thousand dollar certified check on the account of N. B. Armstrong & Son had been protested for non-payment, he wrote on October 30th, the National Bank of Kentucky this letter:

"I have been away from home this last week and in my absence two certified checks were refused—one of $1,000 by N. B. Armstrong and the other of $3,000, by R. E. McQuay. Please return these checks. I have been informed by Mr. Davidson of the Bank Josephine that these checks came through you."

It appears from a letter of the cashier of the Louisville bank in reply to this that on November 1st, the letter written by Weddington was received, and thereupon the Louisville bank telegraphed the bank at Baltimore from which it had received these checks, to return them, and on November 3rd. the three thousand dollar McQuay check and the one thousand dollar uncertified Armstrong check were returned to the Louisville bank and forwarded by it to the Bank Josephine for collection. The two checks thus sent were received by the Bank Josephine on November 6th., and upon presentation were paid by the appellant bank. The certified check, after being protested on October 28th., was sent back to the Ravenswood bank through the banks that had it for collection, and was received by it on November 5th. The uncertified check was never returned to the Ravenswood bank as it was paid, as before stated. Shortly after the one thousand dollar certified check came back protested, the Ravenswood bank demanded payment of the appellant bank, which it refused. Thereupon this suit was

brought by the Ravenswood bank to recover the amount of the certified check.

For defense, the appellant bank set up that Armstrong & Son only had on deposit sufficient funds to pay one of these thousand dollar checks on the dates that both of them were presented for payment, and on the date that the uncertified check for one thousand dollars was paid. That it paid the uncertified check under a mistaken belief that it was paying the certified check for one thousand dollars. It asked that this mistake be corrected and that the Ravenswood bank be required to appropriate the money paid to it on the uncertified check to the payment of the certified check, or that it return to it this money so that it might satisfy the certified check.

After hearing the case the lower court rendered judgment in favor of the Ravenswood bank for the amount of the certified check with interest thereon, and it is of this judgment the appellant bank complains.

It will be observed that two mistakes were made by the appellant bank—first, in protesting the certified check, and second, in paying the uncertified check. How these mistakes happened to be made is not very satisfactorily explained. The certified check had written across the face of it in red ink the words "Certified. October 18, 1905. J. M. Weddington, C." And it would seem that the least sort of diligence upon the part of the officers of the appellant bank would have disclosed that the check paid on November 6th. was not the certified check. So that, upon this feature of the case, the appellant bank does not make out a very meritorious case of mistake upon its part. But, assuming that a mistake was made, and that it would not have paid the uncertified check except for the mistaken belief that it was the certified check, let us now see who ought to suffer by this mistake. We may state as a general principle that where one of two innocent persons must suffer a loss by reason of a mistake, the one whose mistake caused the loss must bear it. (First National Bank v. Behan, 91 Ky. 560; German Security Bank v. Columbia F. & T. Co., 27 Ky. Law Rep., 581.) If, therefore, it comes to a question of loss between these two banks, the appellant bank should suffer, as the appellee bank was not guilty of either negligence or mistake. It received these checks from N. B. Armstrong in the ordinary course of business—it placed them to his credit, as it had the right to do—and then promptly forwarded them through the ordinary and

usual courses for collection. When the uncertified check was not returned unpaid, the Ravenswood bank had the right to assume that it had been paid—and in fact did get credit by it in its account with its corresponding bank. It had no notice to the contrary until several weeks afterwards when it attempted to collect the certified check, as the uncertified check, although protested, was not returned to it—having been recalled by the Louisville bank before it got back to the Ravenswood bank, and paid as before noted. It does not appear that the Ravenswood bank knew about the protest of the uncertified check or that the appellant bank had directed the Louisville bank to return for payment the one thousand dollar certified check that had been protested, until long after the transaction occurred. In fact, the uncertified check was never in the possession of the Ravenswood bank after it was forwarded for collection, because when it was paid it was retained by the appellant bank or delivered by it to Armstrong. The Ravenswood bank had also the right to assume that the certified check would be paid, because its certification made the certifying bank an insurer of this check. And so, under these facts the Ravenswood bank had the right to and did permit Armstrong to draw on and exhaust the deposit in its bank made up to these two checks. We are, therefore, of the opinion that under these facts the appellant bank should not be allowed to defeat the claim of the Ravenswood bank upon the ground that it by mistake paid the wrong check. To do this would put the loss upon the Ravenswood bank.

There is another matter in the record that convinces us that the position of appellant bank is lacking in merit. It is shown by the testimony of the cashier of the Ravenswood bank that when he went to Prestonsburg in November to collect the certified check, he was shown the account of N. B. Armstrong & Son with the appellant bank, and this account showed that on the 27th and 28th of October N. B. Armstrong & Son had to their credit in the bank between $2,300 and $2,400—several hundred dollars more than enough to pay the two one thousand dollar checks that were protested on these dates. N. B. Armstrong testifies that at the time he drew these checks, Armstrong & Son had on deposit in the bank $2,400, with no outstanding checks. He exhibited the passbook of Armstrong & Son, that was balanced on October 31st, and it showed to their credit on that date $1,122.04, and this was after a one thousand dollar check given on

October 21st under circumstances that will be later noted had been paid out of their account. If the statement of J. V. Armstrong as to the amount on deposit to the credit of Armstrong & Son on October 27th and 28th was not correct, or if the statement made by N. B. Armstrong as to the amount to their credit on these dates and the amount to their credit on October 31st was not correct, the appellant bank could easily have shown the truth by the exhibition of its bank books, but, curiously enough, it did not produce its books, nor is there in the record any copy of them. And so we feel authorized to accept as true the statements of the Armstrongs as to the amount to the credit of Armstrong & Son on the dates mentioned. But the appellant bank undertakes to show that Armstrong & Son did not in fact on October 27th or 28th have to their credit $2,300 or $2,400, saying that on October 21st Armstrong gave to it a check for one thousand dollars on the account of Armstrong & Son and it was holding this check on October 27th and 28th. It appears that on October 21st Armstrong did give to the appellant bank a check for one thousand dollars on the account of N. B. Armstrong & Son, so that the bank as Armstrong testifies might hold it and place it under certain conditions agreed upon but that did not arise to the credit of McQuay's account in the bank, to protect the bank from any loss on account of its certification of a $3,000 check of M. E. McQuay, and the fact that this check although dated on the 21st of October was not credited to McQuay's account or charged to Armstrong until the 30th of October supports his statement of the transaction. So that, leaving out of the case this one thousand dollar check, Armstrong & Son had enough money during the entire month of October to pay the two checks Armstrong had given to J. V. Armstrong, cashier; but, if this thousand dollar check dated October 21st was charged to their account they would not have enough left to pay the other two one-thousand-dollar checks. From these circumstances, it looks like the bank was arranging to save itself from any loss on the three thousand dollar McQuay certified check and for this reason did not intend to pay the uncertified check for one thousand dollars, although when this check was presented for payment on October 27th Armstrong & Son had sufficient funds to their credit to pay not only it but the certified check for one thousand dollars. It appears that the purpose was to wait and see whether it would be necessary to charge to Armstrong & Son's account the

one thousand dollar check given on account of the McQuay transaction, before paying the one thousand dollar uncertified check, and that for this reason it was not paid.

But, aside from this last mentioned incident, if the appellant bank has in fact lost money, its loss was occasioned by its own negligence and mistake, and it cannot save itself by putting the loss upon the Ravenswood bank. Upon this view of the case alone, the judgment of the lower court is correct, and is affirmed.